Common Pleas Court of Franklin County.

### J. W. McPherson v. Gillespie & Company et al.

Decided, October 8, 1915.

*Priority—Not Afforded by an Unrecorded Bill of Sale—Or by an Assignment by a Contractor of Unpaid Estimates, When—Receiver Charged with Amount of note thus Secured and Paid by Him—Exceptions to Expenses of Receiver.*

1. A bill of sale given to secure a loan is in effect a chattel mortgage only, and where not filed for record creates no lien on the property covered and has no validity as against creditors of the party by whom it is executed.

2. An assignment by a contractor of unpaid estimates on work in progress is of no validity as against the claims of laborers employed on the work or of sub-contractors and material-men.

3. The payee of a note executed by an employee of the contractor, the proceeds of which were used in prosecuting the work, is a creditor of the maker of the note and not of the contractor to whom the money went, and the maker of the note is only a common creditor of the contractor.

4. A receiver will not be permitted to charge auto hire in going to and from the work he is completing, where no emergency was shown to exist; but he is entitled to pay out of the proceeds of the estate the premium on the bond which he was required to furnish.

*Belcher & Connor*, for plaintiff.

*N. W. Dick, O. R. Crawifs, Eagleson & Eagleson, M. E. Thrailkill, Webber, McCoy & Jones, Turner & Sherman* and *S. R. Bolin*, for the creditors.

BIGGER, J.

Heard on exception to the report of L. J. O'Donnell, receiver.

The first exception taken to the account is that it shows a payment of $96.69 to Jones & Company, which it is claimed was not paid. Upon the hearing it was admitted that this claim on the part of exceptors was a mistake, which disposes of that exception, and the exception is overruled.

The second objection to the report is that it shows that on October 17th Joy H. Hunt was paid $1,050, which is not accounted for in his report. With reference to this item of the account, the following is disclosed by the evidence to be the facts: One J. W. McPherson, who was an employee of Gillespie & Company, borrowed from Joy H. Hunt the sum of $1,000; the additional $50 being a commission allowed to Hunt for furnishing the money. It is claimed that this money was used for the payment of the men engaged on the contract of Gillespie & Company. The testimony of Mr. Hunt himself is clear and explicit that the note given for this money was the individual note of McPherson. To secure this note, it is in evidence that some paper writing, denominated a bill of sale, was executed and signed by both McPherson and Gillespie, covering the equipment used by Gillespie

& Company; and in addition to that an assignment to Hunt of unpaid estimates sufficient to cover his claim. Whether or not this assignment was in writing does not, I think, appear from the evidence, nor in the view I take of it is this material. This so-called bill of sale was clearly in effect a chattel mortgage only, as it was given simply to secure the loan of money. There is no evidence that it was filed as required by law to give it any validity as against the creditors of Gillespie & Company. There was, therefore, no lien created on the property covered by it.

As to the assignment of the estimates, this was of no validity as against the claims of laborers employed by Gillespie & Company, or as against the sub-contractors and material men of Gillespie & Company.

Section 8334, General Code, provides that:

"An assignment or transfer by such head contractor or sub-contractor of his contract with the owner or head contractor, as well as all proceedings in attachment or otherwise against such head contractor or sub-contractor to subject or encumber his interest in such contract, shall save and be subject to the claims of every laborer, mechanic, sub-contractor or material man who furnished any labor, machinery, fuel or material toward the construction, alteration, removal or repair of any building or other property designated in this chapter."

It was decided in the case of *Franklin Bank* v. *City of Cincinnati*, 8 N. P., 517, that this section gives priority to sub-contractors over an assignee to whom an assignment had been made under the contract to secure money to carry out the contract. This decision was by Judge Dempsey, and exhibits the usual exhaustive and thorough consideration and clear and logical statement which characterizes all the decisions of that able judge; and I think there can be no question as to the soundness of his conclusions. Even if the loan had been made by Hunt to Gillespie & Company, Hunt coud not claim a right under this so-called assignment to pro-rate with the sub-contractors and material-men of Gillespie & Company. He can not claim anything by reason of the bill of sale, as I have said. That an unfiled chattel mortgage has no validity as against other creditors was decided in *Thorn* v. *Bank*, 37 O. S., 224; 13 O. F. D., 255; 40 St., 569.

"A receiver represents all the creditors, and against him in such capacity an unfiled chattel mortgage has no priority." *Bain* v. *Pottery Co.,* 12 O. F. D., 301.

But Hunt was not a creditor of Gillespie & Company, on the undisputed evidence in this case. The fact that he may have loaned the money to McPherson with knowledge that McPherson was going to loan it to Gillespie to be used by him can not make any difference.

It appears from the undisputed evidence that McPherson, the plaintiff, in this action brought his suit upon this very note, and obtained judgment upon it; which, so far as the evidence shows, stands unreversed and in full force and effect. Instead, therefore, of Hunt being a creditor of Gillespie & Company, McPherson is the creditor; and it is the duty of the receiver, who was appointed in this action upon the application of McPherson, to pay the plaintiff's judgment if he has sufficient funds to do so. Hunt, it is clear, must look to McPherson for payment, and can not take satisfaction of his claim out of the funds due under this contract, which belong to the creditors of Gillespie & Company. If this were a question only between Hunt and McPherson and Gillespie, it might present a different case; but as against the creditors of Gillespie & Company, Hunt was not entitled to receive payment at the hands of the receiver from the funds derived from this contract; and therefore the court can not allow this as a credit to the receiver against the objections of the creditors of Gillespie & Company. The claim of McPherson itself is only that of a common creditor of Gillespie & Company, and his claim in distribution must be postponed to any material-men and sub-contractors of Gillespie & Company who may have perfected mechanics' liens; for McPherson has no lien on the funds of the receiver. The exception, therefore, to this item of $1,050 must be sustained; and it can not be allowed as a credit to the receiver, but he must be charged with this amount in favor of the excepting creditors.

The next exception is that $747.43 was paid to the Portland Cement Company, which was not authorized by law. In my opinion this exception can not be sustained. It appears that this

amount never came into the hands of the receiver, but that it was paid on the order of the court by the county commissioners directly to the Portland Cement Company. I am unable to perceive upon what principle a receiver can be charged with this under the circumstances, and none has been pointed out by counsel. Whether the payment was authorized by law or not is another question; but it appears that the court which appointed the receiver ordered the payment of this amount by the county commissioners, and I can not understand upon what principle the receiver can be charged with it.

The fourth objection is that the report shows the payrolls in gross, without itemizing to whom they were paid, and for what. There is no law which would require a receiver to include such details in his report; and unless it appears that these payrolls do not actually represent the money paid out, this is not a valid objection to the report.

It must be said that this receivership was managed in a very careless manner. The receiver, it appears, made no inventory of the property which came into his hands upon his appointment, and he was unable to state when inquired of what the completion of the contract had cost him; and in a general way it appears he failed to keep such an account of his proceedings as he should have kept, and was therefore unable to give much information as to the details of the work. But it appears from his testimony that he did keep an account of the amount of money paid out to the workmen on the job, and no evidence has been offered to dispute the correctness of his account in this respect; and this objection must be overruled.

The fifth and last objection is that there are various other irregularities appearing on the face of the report. Under this general objection the creditors object to the item of $26.40 paid for auto hire. This objection must be sustained. It appears from the evidence that there were abundant facilities for reaching the site of this bridge by rail. The receiver does not claim that this expense was incurred by reason of any emergency suddenly arising. Such expenditure of the funds coming into his hands can not be approved by the court. It was his duty to conserve every dollar possible for the benefit of these creditors; and

the court can not put the stamp of approval upon such an unnecessary expenditure of money as this. He says this was for two or three trips. Giving him the benefit of three trips, he is only entitled to the fare by rail to the nearest station for these trips, instead of the amount he claims. This does not appear from the evidence; but he would be entitled to that amount, if counsel can agree upon it.

An item of $14.88 for rubber boots is objected to. I do not think this objection is well taken. Ordinary working men are hardly to be presumed to be equipped with wading boots; and if these became necessary in the progress of the work I do not see that it was an unnecessary expense to provide them, nor that it was the business of the laborers to provide themselves. This objection is overruled.

As to the objection to the Barthman claim being paid in full; the receiver testified that was a claim which he contracted himself; and as the receiver will now have money to pay his own creditors in full, I see no reason for objecting to the payment of Barthman in full.

As to the claim that the Middle State Construction Company owes the receiver, the receiver testified, as I understand him, that he has charged himself in his account with all that the Middle States Construction Company owes him; and that disposes of that objection.

With reference to the load of crushed stone, which it is said is at the bridge site, the receiver should sell that and convert it into money if it can be sold.

As to the objection to the payment of the premium of $77.10 to the surety company on the bond which the county commissioners required the receiver to furnish them, I do not think the receiver can fairly be charged with that. In my opinion it was within the power of the county commissioners for their own protection against liens to require this bond. This objection must be overruled.

Objection is also made to the amount paid the Middle States Construction Company for supervision at seven dollars per day. The receiver testifies that this is the price paid by all concerns engaged in erecting bridges for a superintendent on the job.

There being no testimony to the contrary, this objection must be overruled.

There is no objection, so far as I can find, from the evidence, that the work was not done according to contract, and in a workmanlike manner, showing proper superintendence.

I do not think the evidence sufficient to show that the receiver has not charged himself with the sacks returned. He testifies that he has charged himself with it.

As to the attorney's fees paid, I have some doubt whether the services of an attorney in this case were worth $100; but as the court does not intend to allow any further fees either to the referee or his attorney, the objection to that item will be overruled.

This seems to dispose of the specific objections made to the report.

The receiver is instructed that he should pay first the court costs, and then his own creditors in full; as when he receives the money from the commissioners which is still due he will be in possession of sufficient funds to pay all his own creditors in full, since he must be charged with the $1,050 paid to Hunt.

I may say in passing that under the law the receiver would doubtless have the right to recover this money from Hunt. Hunt's claim is against McPherson, to whom he loaned the money; and if this money thus loaned by McPherson to Gillespie & Company is lost in whole or in part, the loss must be borne by McPherson, and not the preferred creditors of Gillespie & Company. I may add that it appears from the evidence that McPherson's note has never been delivered to him, but was at the time of the trial in the possession of the receiver, and was marked as Exhibit 17 in this case.

Furthermore, as to the claim that in some way this money which Hunt furnished was a preferred claim on the fund in the hands of the receiver because it was used to pay the laborers, there is no evidence before the court as to what use was made of it. Gillespie was not called as a witness, and no person who testified had any knowledge as to what use was made of it, except on hearsay.

It appears from the report that the receiver paid certain claims of Gillespie & Company in full. The court has already

decided that as to $1,050 of this account, being the amount paid to Hunt, it was not a valid claim against Gillespie & Company. After deducting this, the balance of the claimants will be entitled to pro-rate in the balance left after paying the costs and receiver's creditors in full.

Of course, if any of the creditors of Gillespie & Company perfected a mechanic's lien, they should be given preference over the common creditors; and McPherson, who has a judgment in this case is only in the position of a common creditor.

I should add that counsel for the receiver make the claim in argument that as to $264.66 of this indebtedness of Gillespie & Company which was paid in full by the receiver, it represented the claim of a judgment creditor who had seized the equipment upon execution, and that it was in the hands of a constable before the receiver was appointed, and that he had to pay that claim to obtain possession. I do not find anything in the evidence showing that fact; but if that be a fact, I am of opinion that that creditor can not be required to pro-rate with the other creditors of Gillespie & Company, for the reason that the receiver could only obtain the equipment to go on with the work by paying off that creditor; and that as to that claim it stands on an equality with the creditors of the receiver.

As I understand the law, where any of these claimants were given a preference over others in the same class, under the rules which I have announced, the receiver has a right to recover back from them such an amount as will make them equal with the others in their claims.

This I think covers the questions raised by the exceptions to the report, and furnishes a guide to the receiver in settling up the affairs of the receivership; and an entry may be drawn in accordance with this finding.